WEXLER et al. v. RUST et al.

(Supreme Court, Appellate Division, Second Department. April 21, 1911.)

1. MECHANICS' LIENS (§ 111*)—SUBCONTRACTOR—GROUNDS OF LIEN—PERFORM-
ANCE OF PRINCIPAL CONTRACT.

An owner of two houses was required by a "violation" notice from mu-
nicipal authorities to provide "separate ex. heavy cast-iron drains for
each house," and made a contract for the doing of the work as required
by the notice. Plaintiffs contracted with the principal contractor to re-
move the "violation," and at the completion of their work one house was
connected with the sewer by an earthenware drain, and the other house
by a cast-iron drain, and the violation notices were dismissed; and plain-
tiffs thereafter brought action to enforce a mechanic's lien on the amount
claimed to be due and unpaid to the principal contractor. Held that,
while plaintiffs performed their contract with the principal contractor,
they did not perform the principal contract with the owner, and that
there was nothing due the principal contractor to which plaintiffs' lien
could attach.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 144–
146; Dec. Dig. § 111.*]

2. MECHANICS' LIENS (§ 105*)—SUBCONTRACTORS—SUBORDINATION TO RIGHTS
OF PRINCIPAL CONTRACTOR.

An owner of buildings made a contract for specific plumbing work at a
price based on the extent of the work, and the contractor, who was not
a "licensed plumber," and who, under General City Law (Consol. Laws
1909, c. 21) §§ 40, 44–46. could not recover if she had done the work her-
self, or through her own employés, made a contract with plaintiffs, who
were licensed plumbers, to do the work. Under Lien Law (Consol. Laws
1909, c. 33) § 4, a lien of a subcontractor attaches to "the sum earned and
unpaid on the contract." Held, in plaintiffs' action to enforce a mechan-
ic's lien, that, as the principal contractor could not recover under the
city law, there was no amount due or any balance unpaid under the prin-
cipal contract to which a subcontractor's lien could attach.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 105.*]

3. MECHANICS' LIENS (§ 105*)—SUBCONTRACTORS—BALANCE DUE PRINCIPAL
CONTRACTOR.

The general rule is that a subcontractor, seeking to enforce a mechan-
ic's lien against real property, must show that there is a balance due
from the owner to the principal contractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 137;
Dec. Dig. § 105.*]

Appeal from Municipal Court, Borough of Brooklyn, Third Dis-
trict.

Action by Adolf Wexler and Adam Zorn against John Herman
Ernst Rust and another. From a judgment of the Municipal Court,
defendant Rust appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-
WARD, and RICH, JJ.

Herman Joerg, for appellant.
James E. Finegan, for respondents.

CARR, J. This is an appeal by the defendant from a judgment
of the Municipal Court in the borough of Brooklyn in favor of the
plaintiffs in an action brought to enforce a mechanic's lien against

real property owned by the defendant Rust. The pleadings were in writing. The facts established at the trial were as follows:

The defendant Rust owned two houses, known as Nos. 167 and 169 Bedford avenue, in the borough of Brooklyn. On or about June 15, 1909, he received from the bureau of buildings in the borough of Brooklyn a notice in writing that he maintained on said premises a violation of the Building Code of the city of New York, in that:

"The soil line from water-closets in corner house is extended and connected. to house drain of adjoining premises which is contrary to permit 2020 A/08. Violation Secs. 43 and 45."

This notice then provided, in part, as follows:

"You are required to provide separate ex. heavy cast-iron house drain for each house."

With Rust's authority, some time in December, 1909, his wife took this notice to one Augusta Ziemer, who was doing business in Brooklyn as a "tinsmith and plumber," and requested an estimate on the cost of doing the work required by the "violation" notice. Mrs. Ziemer stated that she had a man to do the plumbing work, and after some negotiation a contract was entered into between Mrs. Ziemer and Rust, through his wife, for the work specified in the notice aforesaid at the cost of $240. Mrs. Ziemer sublet this plumbing work to the plaintiffs at a cost of $220. The plaintiffs entered upon the performance of the work, and when it was half done Rust paid Mrs. Ziemer the sum of $120 on account of the contract price.

[1] The plaintiffs claimed to have performed completely their contract with Mrs. Ziemer, and seek to enforce against Rust's real property a mechanic's lien for the sum of $120, which they claim remains unpaid to Mrs. Ziemer by Rust. There is no dispute that Rust has not paid Mrs. Ziemer the remaining sum of $120. He disputes the plaintiffs' right to a mechanic's lien on two grounds, as follows: (a) That Mrs. Ziemer has not performed her contract; (b) that Mrs. Ziemer, not being a "licensed plumber," could not recover under her contract, though she had performed it, and consequently there was nothing due under said contract to which a lien in favor of the plaintiffs could attach.

It appears without question in the case that the plaintiffs did not put in "seperate ex. heavy cast-iron house drains for each house." When they started in with their work, they found one of the houses connected with a sewer in the street by an earthenware drain, to which was connected the drain from the other house. They disconnected the drain from the one house and connected that house with the sewer by an iron drain; but they left the original earthenware drain undisturbed, so that, as a result of their work, one house was connected with the sewer by an earthenware drain, and the other house by a cast-iron drain. They claim full performance of their contract with Mrs. Ziemer, on the ground that such contract called on them, not to put in two separate sewers, but simply to remove "the violation" which had been filed against the property, and that said "violation" had been removed when they finished the work.

It appears that a "violation" notice had also been given by the tenement house department of the city of New York; but this notice was based upon the connection of the drains of both houses as a violation of sections 5 and 121 of the tenement house act (Consol. Laws 1909, c. 61), but contained no provision as to a "separate ex. heavy cast-iron drain for each house." Concededly both "violation" notices were dismissed by the respective city departments, and if the contract between Rust and Mrs. Ziemer simply called for a removal of these "violations" it was performed fully by the plaintiffs. The difficulty is that Mrs. Ziemer herself, called as a witness for the plaintiffs, admits that the negotiations between Mrs. Rust and herself had relation to "two new sewers," as provided in the "violation" notice from the building department, and the contract for the work to be done was made with that relation as between Mrs. Ziemer and Rust. If this be so, then, though the plaintiffs may have performed their contract with Mrs. Ziemer, they have not performed her contract with Rust; for they have put in but one new sewer, and but one separate heavy cast-iron house drain. Under these circumstances, nothing became due from Rust to Mrs. Ziemer to which the plaintiffs' claim of lien may attach.

[2] As to the further defense of Rust, a similar difficulty arises against the plaintiffs. Mrs. Ziemer unquestionably held herself out as a "tinsmith and plumber." Rust's contract with her for the plumbing work in question was for the doing of a specific job of plumbing at a price based upon the extent of that work. As she was not a "licensed plumber," she could not recover for the work so done, if she had done it herself through her own employés. General City Law, §§ 40, 44–46. Is the situation changed by the fact that she did it through subcontractors, who were licensed plumbers? It has been held in Bronold v. Engler, 194 N. Y. 323, 87 N. E. 427, 21 L. R. A. (N. S.) 176, that the statute in question applies to a case where persons, not licensed as master plumbers, but carrying on the trade or business of master plumbers, enter into a contract for plumbing work, even where such persons employ as their manager a duly licensed plumber, under whose supervision the contract is performed. The court, while so holding, declared:

"We do not say that any one, not a master plumber, making a contract which provides to some extent for plumbing work, would fall within the inhibition of the statute. A builder might contract to erect and complete a house or other structure, including the plumbing work, for a gross sum, and for that purpose he would have the right to employ a licensed master plumber to do the plumbing work. He would in such case in no fair sense be conducting 'the trade, business, or calling' of a master plumber. It would be the mere incident of a larger work. In this case, however, the trade of a master plumber is the very business or trade which the plaintiffs hold themselves out as pursuing, and, therefore, falls within the inhibition of the statute."

Such is the situation in the case at bar, although it was proved that, at the time the work in question was being done, Mrs. Ziemer was also doing some tinsmith work for Rust; but the contract for such work was entirely distinct from that relating to the plumbing work, so that both species of work were not done under a general contract for a gross sum.

· In Putnam v. Siravo, 140 App. Div. 194, 124 N. Y. Supp. 1105, this court upheld a complaint in which it was sought to recover for plumbing work done by a subcontractor, who was a licensed plumber, but under a contract between the defendant and the plaintiff, who was not a licensed plumber. In that case, however, the contract was a general contract for the installation of plumbing, heating, and electric light apparatus, for a gross sum for all the work so contracted for. However general the language of the opinion, it was not intended therein to go beyond the limits suggested in Bronold v. Engler, supra.

If, however, Mrs. Ziemer could not recover under her contract with Rust, because it violated the statute, it is difficult to see in what better position the plaintiffs can find themselves. Under the lien law, the lien of a subcontractor attaches to "the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon." Lien Law, § 4.

[3] The general rule is that a subcontractor, seeking to enforce a mechanic's lien against real property, must show that there is a balance due from the owner to the original contractor to which the lien may attach. Butler ·v. Aquehonga Land Co., 86 App. Div. 439, 83 N. Y. Supp. 874; Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Brainard v. County of Kings, 155 N. Y. 538, 50 N. E. 263. It would appear, therefore, where, because of the inhibition of the statute, nothing could become due under the original contract, neither could there be any balance unpaid thereunder to which might attach a mechanic's lien in favor of a subcontractor.

It should follow, therefore, that the judgment of the Municipal Court should be reversed, and a new trial ordered; costs to abide the event. All concur; THOMAS, J., in result.