Edward J. Greenfield, J.
Plaintiff seeks a declaratory judgment that an agreement between it and the defendants is void and unenforceable under the laws of the State of New York, and that arbitration provided for therein should be stayed.
Plaintiff is a large Austrian iron and steel works with offices and employees all over the world. In January, 1965, it entered into a contract with defendants, designers and developers of a modular system of prefabricated construction. Under the agreement defendants granted to the plaintiff an exclusive license to use its designs and information in the manufacture, sale and erection of modular buildings worldwide, except for the United States, Canada and Japan. Plaintiff was to pay, and did pay, $90,000 plus specified royalties. Defendants were to furnish plaintiff with plans and specifications for various modular buildings, and were to assist plaintiff in adapting it to the requirements of the particular countries in which such buildings would be erected and assist plaintiff in research, development, adaptation of manufacturing machinery and tools, and marketing and sales. The agreement gave plaintiff the right to cancel the contract at the end of six months. This right was never exercised.
When defendants were unable to get an accounting from plaintiff as to the overseas sales, they demanded arbitration pursuant to the agreement. Plaintiff countered by contending *1051 that the entire contract was illegal and unenforceable because it called for the performance of architectural and engineering services by parties who were not licensed to perform those services, in violation of sections 7201 and 7302 of the Education Law of the State of New York.
The obvious and avowed purpose of those sections of the New York Education Law is to safeguard the life, health and property of residents of New York. All the buildings involved here were to be erected in localities thousands of miles from New York, and in conformity with respective local and national construction codes. The contract between the parties, while it did call for the furnishing of plans and specifications which would necessarily involve architectural and engineering services, called for much more besides. Defendants also were to provide their know-how in research and development, manufacturing techniques and marketing and sales, none of which necessarily called for architectural or engineering skills. It cannot be, and I do not so find, that an entire contract comprehending many services to be performed, including those calling for the services of licensed professionals, can be stricken because the party furnishing the services is not itself a licensed professional.
To hold otherwise would mean that not only concept developers like defendants, but builders and general contractors would likewise be incapable of enforcing their contracts because architectural and engineering skills are incidentally involved. That this is not the intent of the statute is revealed by subdivision 1 of section 7307 of the New York Education Law, which reads as follows: “ This article shall not be construed to affect or prevent * * * the preparation of details and shop drawings by persons, other than architects, for "use in connection with the execution of their work; nor to prevent employees of those lawfully practicing as architects under the provisions of this article from acting under the instruction, control or supervision of their employers, nor to apply to the supervision by builders, or superintendents employed by such builders, of the construction or structural alterations of buildings or structures ”.
The rights sought to be protected by the statute are adequately covered when the contractor, manufacturer or builder engages a properly licensed person to perform those tasks which the law specifies call for certified skills.
‘ ‘ A builder might contract to erect and complete a house or other structure, including the plumbing work for a gross sum and for that purpose he would have the right to employ a *1052 licensed master plumber to do the plumbing work. He would in such case in no fair sense be conducting the ‘ trade, business or calling ’ of a master plumber. It would be the mere incident of a larger work.” (Bronold v. Engler, 194 N. Y. 323, 325; see, also, Putnam v. Siravo, 140 App. Div. 194.)
‘ ‘ A contract or claim is not unenforcible for lack of a license where a license is not required for the services performed or contracted for under the circumstances of the case, or where the unlicensed person engages or enters into an agreement with licensed persons to do the work or conduct the business under terms permitted by the statute.” (53 C. J. S., License, § 59, p. 713; see, also, Lytle v. Godfirnon, 241 Wis. 533; Wahlstrom v. Hill, 213 Wis. 533.)
In commenting on a similar statute, the California Supreme Court stated: ‘1 The act does not prohibit a corporation from contracting to furnish to another person plans and specifications which are to be prepared by a third person who is a certificated architect. * * * The act does not forbid a corporation to employ certificated architects, have them prepare plans and specifications, and then furnish such plans and specifications to other persons.” (Binford v. Boyd, 178 Cal. 458, 463.)
In this case it appears that all the plans and specifications furnished by the defendants with respect to the architectural and engineering phases of the modular building system were duly prepared by licensed and certified architects and engineers, and so the requirements of the Education Law of the State of New York were in fact complied with in all respects. (Clement S. Crystal, Inc. v. Denberg, 237 N. Y. S. 2d 102, 105.)
It is apparent that plaintiff’s present claim of illegality is a subterfuge to avoid compliance with the terms and conditions of the contract. They knew all along that defendant corporations were not licensed architects or engineers, and they had the plans and specifications stamped by licensed professionals in their hands long before the contract was executed. Both parties entered upon performance of the contract without any questions being raised, and even now plaintiff does not claim that it could not manufacture and erect the structures because of objections by any governmental authority. The court finds that a valid and legal contract exists between the parties, that the stay of arbitration should be vacated, and that all items in dispute are properly the subject of arbitration pursuant to paragraph 17 of the contract.